In the matter of the estate of CATHERINE BEHRING, deceased.

JOHN LOHMAN, executor, appellant,

*v.*

MARY AST, administratrix, &c., of George Ast, deceased, respondent.

[Decided February 29th, 1912.]

1. Testatrix, in possession of a bank book showing a balance due to her, had her daughter's name entered upon the book, so that the account appeared to be payable either to the mother or to the daughter, and retained the book in her possession until her death, and it was not taken by the daughter until a week later.—*Held,* that the transaction was not a gift *inter vivos.*

2. Testatrix, a short time before her death was in possession of a bank book showing a balance due to her, and had her daughter's name entered therein, so that the account appeared to be payable either to her

or the daughter; but the book remained in her possession until the day of her death, when she asked her daughter for the satchel containing it, and, after taking it, handed it back to the daughter, saying that the bank book was in there, and the daughter put it down again, and did not take it out of the satchel until a week later.—*Held*, that the transaction was not a gift *causa mortis*.

On appeal from a decree of Union county orphans court.

*Mr. Robert S. Hudspeth*, for the appellant.

*Mr. Samuel Koestler*, for the respondent.

PITNEY, ORDINARY.

At the instance of Mary Ast, administratrix of George Ast, deceased, a judgment creditor of Catherine Behring, deceased, the orphans court issued a citation to John Lohman, executor, &c., of Catherine Behring, deceased, requiring him to show cause why he should not pay the judgment. At the return of the citation the executor exhibited a petition representing the estate of Catherine Behring to be insolvent, and praying for relief under section 100 of the Orphans Court act. *P. L. 1898 p. 752.* Together with the petition he exhibited what was alleged to be a true account and inventory of his estate, in which he stated as the entire amount of the estate which had come to his hands, knowledge or possession the sum of $1,125, "received from bond and mortgage." To this account Mrs. Ast, administratrix, &c., as a creditor, filed exceptions under section 104 of the act, on the ground, among others, that the estate of Catherine Behring, included other moneys and assets for which the executor had not accounted. After the hearing of the exceptions the orphans court made an order surcharging the account and inventory (*inter alia*) with the sum of $275, as the "amount shown to be on deposit in the bank book owned by the said Catherine Behring at the time of her decease."

From this part of the order, and from this part only, the executor appeals to this court.

It is not disputed that at the time of the death of the testatrix

she was in possession of a savings bank book upon which there was a balance of $275 due to the depositor. It appears, however, that some time before the death of the testatrix she took her daughter, Dora Kron, with her to the savings bank, and had the daughter's name entered upon the book, so that the account appeared to be payable to Catherine Behring or Dora Kron. This was done, as the daughter testified, to enable the daughter to draw the money in case of "anything happening" to the mother; or, to use the daughter's own words, "She said that if anything happened, if she was sick or anything of that sort, then I would be able to get the money." The bank book remained in the mother's possession until the time of her death, it being kept in a satchel. The daughter testified that she never saw the bank book from the time her name was written in it until the day of the mother's death, when the daughter was called into the bedroom and the mother handed her the satchel, and the daughter took it, and without opening it put the satchel back under her bed. The daughter's account of this occurrence, upon the witness-stand, is:

> "She (meaning the mother) said to me, 'Dora, hand me my satchel,' and I handed it to her, and she handed it back to me, and she said, 'My bank book is in here,' and then she handed it back to me, and I put it back again under her bed."

The mother died later in the day, and the daughter did not take the bank book out of the satchel until a week later. She then called the attention of the executor to the matter, telling him that she had the bank book, and he told her to pay the undertaker's bill, amounting to $175.50, out of the money in the bank, and this she did. The executor, in an amended account and inventory filed after the hearing of the exceptions and before the making of the decree thereon, prayed credit for payment of the funeral expenses, but did not charge himself with the amount of the savings bank book.

The learned counsel for the appellant, upon the argument before me, claimed that the evidence showed that the testatrix had given the savings bank account to the daughter, Dora Kron, either by gift *inter vivos* or by gift *causa mortis*. In my opinion the evidence does not show a gift of either sort, but clearly shows

that the daughter's name was put into the book only to enable the testatrix to use the daughter as her agent for drawing moneys in the event of the mother being overcome by illness.

It is objected that the orphans court illegally admitted testimony of Mary Ast respecting a declaration by the testatrix concerning the amount due in the bank book. I have rejected the disputed evidence, and have based my conclusion upon the other evidence in the case and the admissions in the briefs.

. The decree under review should be affirmed.